UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Peter M. Smith,

    Plaintiff,

    v.                                                   Civil Action No. 2:14-cv-20

Richard Byrne and
Darryl Graham,

    Defendants.

## **REPORT AND RECOMMENDATION**
(Doc. 10)

Plaintiff Peter M. Smith, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendants Richard Byrne and Darryl Graham who are Vermont Department of Corrections ("DOC") officials. (Doc. 6.) Smith alleges that he provided information to corrections officials in exchange for Defendants' promise that Smith's identity would be kept confidential, and that Defendants released his identity, causing him to suffer abuse and fear in violation of his Eighth Amendment rights. Now pending before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 10.)

For the reasons that follow, I recommend that Defendants' Motion to Dismiss (Doc. 10) be GRANTED. I further recommend that the Court GRANT Smith leave to file an Amended Complaint.

**Factual and Procedural Background**

For the limited purpose of ruling on Defendants' Motion to Dismiss, the facts alleged in the Complaint are accepted as true. Smith is an inmate in custody of the State of Vermont.[1] On July 6, 2011, while detained at the Franklin County Jail & House of Correction in Greenfield, Massachusetts, Smith witnessed a riot. (Doc. 6 ¶ 6.) The next day, Byrne and Graham "came down from [the] central office" and spoke with Smith about the riot. (*Id.*) According to Smith, Defendants "asked [him] to help them identify . . . the inmate[s] involved." (*Id.*) Smith alleges that he told Defendants that he "would help only if they promise[d] that [his] name would never get out. That no one would ever know what [he] did to help them." (*Id.*) Smith alleges that Defendants told him that he was "doing the right thing," and "they also told [him] that it would all be confidential." (*Id.*) Smith trusted Defendants would keep his name confidential, and he would not have cooperated otherwise. (*Id.*)

Later on, several inmates gave Smith a copy of "an affidavit" with Smith's "name all over it." (*Id.*) Smith alleges the inmates have "punished and persec[]uted [him] in so many different ways" because they know that Smith helped DOC identify the prisoners involved in the riot. (*Id.*) He further alleges that because Defendants have "broken confidentiality," his life has been a "living hell," he and his family are now in harm's way, he has "lost all respect and saf[e]ty" from the inmates, he is "in fear all the time," and he has suffered "emotion[al] abuse" and "daily pain [and] suffering." (*Id.* at ¶¶ 6, 9.)

---

[1] It appears from the record that Smith was released from custody in or around May 2014. It also now appears he has been re-incarcerated for an unknown reason. *See Vermont Department of Corrections Offender Locator*, http://doc.vermont.gov/offender-locator/offender-locator/Offender_report (last visited Nov. 24, 2014).

Smith filed a grievance at the Springfield, Vermont facility on a date not specified in the Complaint. (*Id.* at ¶ 4(b)(i).) He alleges that in the response to the grievance, DOC took "responsibility in owning it," but "have done nothing about it." (*Id.* at ¶ 4(b)(ii).) He alleges that he was told to talk to the staff to consider his options if he felt unsafe, but Smith claims that he does not trust DOC anymore. (*Id.*)

Smith filed an Inmate Civil Rights Complaint on February 11, 2014. (Doc. 6.) He seeks $5 million in compensatory damages for "emotion[al] abuse," and "daily pain [and] suffering." (*Id.* at ¶ 9.) He also requests injunctive relief in the form of a "new life, new identity, to move out of the state," and for the State of Vermont to protect him and his family. (*Id.*) Finally, Smith asks DOC to "max [his] sentence out." (*Id.*)

Defendants filed their Motion to Dismiss (Doc. 10) on April 8, 2014, arguing that Byrne and Graham are immune from liability in both their official and individual capacities, that Smith fails to allege any physical injury, and finally, that Smith fails to allege a constitutional violation. Smith did not file a response.

## Discussion

I. **Motion to Dismiss Standard: Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff

3

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Where, as here, the plaintiff is proceeding *pro se*, courts are obligated to construe the pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (second alteration in original) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002)).  A *pro se* plaintiff's complaint must state a claim to relief that is plausible on its face. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  The plausibility standard is not analogous with a

probability requirement.  *Neilsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  "'[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.     Sovereign Immunity

Defendants contend that Smith is barred by the Eleventh Amendment from recovering damages from Defendants in their official capacities.[2]  In general, the Eleventh Amendment prohibits plaintiffs from recovering in federal court damages against state officials in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[A] claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment.").

A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985).  In addition, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  However, Vermont has expressly preserved its immunity under the Eleventh Amendment, *see e.g.*, 12 V.S.A. § 5601(g), and Congress did not intend to abrogate

---

[2] In construing the pleadings liberally, I address Smith's claims as they pertain to Byrne and Graham in both their official and individual capacities.  *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other.").  *See also Alster v. Goord*, No. 05 Civ. 10883(WHP), 2008 WL 506406, at *2 (S.D.N.Y. Feb. 26, 2008); *Reynolds v. Goord*, No. 98 CIV. 6722(DLC), 2000 WL 235278, at *7 n.12 (S.D.N.Y. Mar. 1, 2000).

sovereign immunity by enacting § 1983, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). Accordingly, Smith's claim for monetary damages against Byrne and Graham in their official capacities is barred by sovereign immunity.

### III.    Personal Involvement

To the extent Smith brings this action against Defendants in their individual capacities, Defendants assert that the Complaint fails to allege the personal involvement necessary to establish an individual-liability claim. (Doc. 10 at 7.) The Defendants argue that the Complaint fails to specify any individual action by either Byrne or Graham, and only sets forth general allegations that confidential information somehow got to the inmates. (*Id.*)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The plaintiff must show "more than the linkage in the prison change of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). The Second Circuit has explained that "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). "[T]he plaintiff must still demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Id.* Sufficient personal involvement may be show by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a

6

policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Here, Smith has failed to allege sufficient facts to show the link between Defendants' acts and the risk of harm. Smith merely alleges that Defendants "broke confidentiality," but does not specify the conduct that gives rise to this conclusory allegation. "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. As the state Defendants argue, "no individual is identified as disclosing confidential information, being aware of such a disclosure and allowing it to continue, negligently supervising someone who was personally involved, or even exhibiting deliberate indifference." (Doc. 10 at 7.) In addition, Smith's complaint reveals that the DOC responded to his grievance, and invited Smith to discuss his options. Smith elected to not do so. Absent sufficient factual allegations, Smith has failed to show Byrne and Graham's personal involvement in the alleged constitutional violation, and Defendants' Motion should be GRANTED on this basis.

---

[3] Although the Supreme Court's decision in *Iqbal* may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case, for Smith's Complaint does not adequately plead Byrne and Graham's personal involvement even under *Colon*. *See Grullon*, 720 F.3d at 139.

## IV.     PLRA's Physical Injury Requirement

Defendants assert that to the extent that Smith seeks compensatory damages against them in their individual capacities, Smith fails to allege a physical injury required by the Prison Litigation Reform Act (PLRA).  Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).[4]  Because the phrase "Federal civil action" is unqualified, the statute "applies to all federal civil actions including claims alleging constitutional violations."  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *see also Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (reasoning that "§ 1997e(e) precludes claims for emotional injury without any prior physical injury, regardless of the statutory or constitutional basis of the legal wrong.").  This section limits "recovery of damages for mental and emotional injury in the absence of a showing of physical injury."  *Thompson*, 284 F.3d at 416.  In *Thompson*, the Second Circuit clarified that § 1997e(e) "does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief."  *Id.*

---

[4]  The purpose of § 1997e(e) was

> to tie recovery for emotional injury to the existence of a corresponding physical injury.  It seems that Congress concluded that the existence of physical injury would distinguish meritorious prisoner claims of emotional injury from frivolous ones; the physical injury would, in essence, vouch for the asserted emotional injury.  Congress recognized that, unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits.

*Espinal v. Goord*, No. 00 Civ. 2242(AJP), 2001 WL 476070, at *12 (S.D.N.Y. May 7, 2001).

8

In order to state a claim for compensatory damages under the PLRA, Smith must allege physical injury, which he has not done. Here, Smith has requested damages for "emotion[al] abuse and "pain [and] suffering." Compensation for emotional abuse, absent a showing of physical injury, is specifically barred under the PLRA. Furthermore, Smith's claims of pain and suffering are not a sufficient allegation of physical injury. *See Dillon v. City of New York*, 2013 WL 6978959, *2 (S.D.N.Y. 2013). Although Smith plainly alleges emotional harm, without a prior showing of physical injury, Smith may not seek damages for emotional injury or pain and suffering. Therefore, Smith has failed to meet the requirements of the PLRA with respect to his claim for compensatory damages. Accordingly, I recommend that Defendants' Motion to Dismiss be GRANTED insofar as the Complaint seeks compensatory damages.

**V.     Failure to Allege a Constitutional Violation**

Defendants contend that Smith has failed to allege a constitutional or federal law violation. Fundamentally, Smith's claim is an allegation that Defendants violated the Eighth Amendment's prohibition on "cruel and unusual punishments," U.S. Const. amend. VIII. He alleges that he provided information to Defendants with their promise that the information would be kept confidential, and that they broke Smith's confidentiality when "an affidavit" was circulated around the prison with Smith's name "all over it." (Doc. 6 ¶ 6.) He further alleges that these events resulted in other inmates retaliating or punishing him. (*Id.*)

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*,

84 F.3d 614, 620 (2d Cir. 1996). Specifically, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation and internal quotation marks omitted). "However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F.3d at 620. The test for deliberate indifference requires a two-part showing: "'First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the Defendant prison officials possessed sufficient culpable intent.'" *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 435 (E.D.N.Y. 2010) (quoting *Hayes*, 84 F.3d at 620).

### A. Substantial Risk of Harm

As to the first prong of the deliberate-indifference analysis, the Court must determine whether Smith was incarcerated under conditions that posed a substantial risk of harm. "[A] substantial risk of harm can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack actually occurs." *Id.* at 436; *see also Farmer*, 511 U.S. at 845 (where a plaintiff requests injunctive relief to prevent a substantial risk of serious harm, he need not wait until he is in fact assaulted before any such relief is afforded).

Courts have long recognized that being labeled a snitch, an informant, or a cooperating witness "poses a threat to the inmate's health and safety." *Medina v. Whitehead*, No. 3:13-cv-885 (VLB), 2014 WL 3697886, at *2 (D. Conn. July 24, 2014)). *See also Campbell v. Gardiner*, No. 12-CV-6003P, 2014 WL 906160, at *4 (W.D.N.Y.

Mar. 7, 2014). To state a cognizable claim under these circumstances, "a plaintiff must . . . allege facts that, if proven, would establish that he . . . faced actual or imminent harm as a result of the identification." *Id.* at *4 (internal quotation marks omitted). "While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation." *Cooper v. City of New York*, No. 13-cv-7590 (PKC)(JLC), 2014 WL 5315074, at *3 (S.D.N.Y. Oct. 17, 2014). *See also Cruz v. Hillman*, No. 01 CIV 4169 DABDF, 2002 WL 31045864, at *8–9 (S.D.N.Y. May 16, 2002) ("[F]ear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment."); *Green v. City of N.Y. Dep't of Corr.*, No. 06 Civ. 4978(LTS)(KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (holding that a prisoner's allegations of death threats, absent a claim that physical harm actually existed or was imminent, was sufficient to constitute a substantial risk of serious harm under the Eighth Amendment).

Here, all Smith alleges is that his name appeared on "an affidavit." (Doc. 6 ¶ 6.) He does not specify who wrote the affidavit, for what purpose it was written, or even what the affidavit states. Furthermore, he has not alleged any facts to show that he faced a threat of physical harm. Smith has only alleged the inmates have made his life a "living hell," and that he is "in fear all the time." (*Id.* at ¶¶ 6, 9.) Therefore Smith's Complaint fails to meet the first prong of the deliberate-indifference test.

### B. Sufficient Culpable Intent

Likewise, Smith has not met the second prong of a deliberate-indifference claim by failing to show that Defendants had the requisite culpable intent. To meet the subjective culpability prong, a prison official must have knowledge that an inmate faces a substantial risk of serious harm, and disregard that risk by failing to take reasonable measures to protect the inmate. *Farmer*, 511 U.S. at 837–38. In the context of the duty to protect, "correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." *Goode v. Faneuff*, No. 3:04CV1524(WWE), 2008 WL 3360833, at *2 (D. Conn. Aug. 8, 2008) (citing *Ayers*, 780 F.2d at 209).

Not only are Smith's allegations that Byrne and Graham "broke confidentiality" wholly conclusory, but Smith does not allege that, once the affidavit was circulated to other inmates, Defendants were either made aware of that fact or failed to take reasonable steps to ameliorate the risk. Smith states that Defendants "should have done everything in their power to keep this confidential" (Doc. 6 ¶ 7), but the standard does not require prison officials to take extraordinary measures to protect inmates, only reasonable measures. Smith did alert DOC of the alleged threats to his safety when he filed a grievance. However, Smith's Complaint states that he needed to "talk to [the] staff" and "consider op[t]ions" for steps moving forward, which he did not do. (*Id.* at ¶ 4.) Smith's allegations do not support a reasonable inference that Defendants possessed the requisite culpable intent to meet the second prong of the deliberate-indifference analysis.

12

Accordingly, I recommend that Defendants' Motion be GRANTED as Smith's Complaint fails to state a claim upon which relief may be granted.

## VI. Injunctive Relief

Smith requests a variety of injunctive-relief measures, none of which the Court may grant in the current action. Smith requests that DOC "max [his] sentence out" so that he may be released from prison. (Doc. 6 ¶ 9.) The Second Circuit has repeatedly held that a request for the release from custody is an application for habeas corpus. *United States ex rel. Katzoff v. McGinnis*, 441 F.2d 558, 559 (2d Cir. 1971). Specifically, a request for release from custody is "not an available remedy under the Civil Rights Act." *Id.* (internal quotation marks omitted) (citing *Peinado v. Adult Auth. of Dep't. of Corr.*, 405 F.2d 1185, 1186 (9th Cir. 1969). Accordingly, this request for relief is outside the Court's consideration under the current 42 U.S.C. § 1983 claim.

## VII. Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, Smith has not yet filed an amended complaint. He has stated in his pleadings that he can prove his allegations (*see* Doc. 6 at 5). Smith suggests in subsequent correspondence to this Court that there may be additional facts he could allege that may permit his complaint to survive a motion to dismiss.[5] With amended pleadings, Smith may be able to state a plausible § 1983 claim.

Any amended filing should be entitled "Amended Complaint" and should contain all claims against all parties as it will supersede the original Complaint in all respects. The Court should require that an Amended Complaint, if any, be filed within 30 days of its ruling on this Report and Recommendation. Failure to amend should result in dismissal with prejudice of all of Smith's § 1983 claims against Defendants.

## **Conclusion**

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (Doc. 10) be GRANTED. I further recommend that, if this Report and Recommendation is adopted by the Court, Smith be allowed 30 days to file an Amended Complaint. Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 2nd day of December, 2014.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

---

[5] Smith has submitted two letters to this Court for the purpose of updating his mailing address. (*See* Docs. 12 and 14.) However, the letters seem to indicate that DOC moved Smith because of the abuse (*see* Doc. 12), and that he is now out of prison (*see* Doc. 14), which may make his claims for injunctive relief moot. (*See* Doc. 12.) Furthermore, he has mentioned two assaults in connection with this matter, which may satisfy the PLRA requirements. Regardless, these facts are not part of the Complaint, and therefore are not analyzed as part of the instant Motion.

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).